(84 South. 741)

MEANS v. BLANKS. (2 Div. 688.)

(Supreme Court of Alabama. Nov. 27, 1919.)

1. LOGS AND LOGGING ☞3(6)—PAPER HELD NOT TO HAVE TRANSMITTED TITLE TO TIMBER.

Paper, whereby the seller of timber certified that he had sold for a given price, and the buyer agreed to give the seller a mortgage, and another paper whereby the seller agreed to release the timber on certain 40's of the land on the contingency of payment by the buyer, *held* never to have transmitted title to standing timber on the land.

2. FRAUDS, STATUTE OF ☞129(8)—PAYMENTS BY PURCHASER IN POSSESSION MET STATUTE.

Payments made by the purchaser of timber on the purchase money, and putting of the purchaser in possession by the seller, met the exaction of Code 1907, § 4289, subd. 5.

3. EVIDENCE ☞442(1)—PAROL EVIDENCE ADMISSIBLE TO DETERMINE TERMS OF CONTRACT WHERE PAPERS NOT CONCLUSIVE.

The papers which passed between the parties being inconclusive as to terms of contract between them, what the terms were in fact was a question on which all pertinent evidence, written as well as parol, of the negotiations, acts, statements, and conduct of the parties, was admissible.

4. LOGS AND LOGGING ☞3(14) — BUYER OF TIMBER WHOSE RIGHT WAS LIMITED TO TWO YEARS HELD A TRESPASSER IN RE-ENTERING THEREAFTER.

Where defendant's right to cut timber was limited under his contract with plaintiff to two years, and after notice not to do so he returned his previously removed mill to the land after such two years and cut and removed timber, plaintiff could recover such damages as the entry, cutting, and removal had entailed, if he did not consent.

Appeal from Circuit Court, Choctaw County; Ben. D. Turner, Judge.

Action by B. P. Means against C. F. Blanks for conversion and trespass. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

The paper referred to in the opinion as of date August 12, 1914, is as follows:

State of Alabama, Choctaw County:

This is to certify that I have this day sold to C. F. Blanks 160 acres of timber near Job Ruffins, said timber was originally owned by A. R. Hardin, the price of said timber being $1,200.00, one thousand two hundred dollars.

Said C. F. Blanks agrees to give said B. P. Means a mortgage on said timber for the purchase price and to enter into contract covering $2.50 per thousand feet on all timber sold and to apply this amount to the payment of this obligation.

Witness our signature this the 12th day of August, 1914.    [Signed] B. P. Means.
    [Signed] C. F. Blanks.

The paper referred to as of date September, 1914, is as follows:

This indenture witnesseth: That in consideration of the divers agreement, covenants, and stipulations contained in the foregoing and attached mortgage from C. F. Blanks, to the undersigned B. P. Means, the said B. P. Means agrees to and with the C. F. Blanks, his heirs, legal representatives or assigns, that upon the payment to him or them at any time the sum of two and fifty hundredths $2.50 dollars for per thousand feet for all the timber lying being or

standing in and upon any one or more forty-acre tracts of land, described in said mortgage, the said B. P. Means, his heirs, legal representatives or assigns, will release from the operation of this mortgage such forty-acre tracts of land or timber and the said C. F. Blanks, his heirs, legal representatives or assigns, shall have the right to enter upon such tract land and cut and remove said timber therefrom and for the purpose of determining the amount which shall be paid for the release of any of the said several tracts or timber, under the term of this agreement ·it is hereby now agreed that the estimated quantity of timber upon said land is as follows: [Here follows description of the several 40's and an estimate of timber thereon.]

It is agreed that such release shall•be made and evidenced only by a written agreement, duly signed and acknowledged by the said B. P. Means, his heirs, legal representatives. or assigns which shall be filed for record in the office of the probate judge of Choctaw county, Alabama, and that such partial release shall in no wise affect the validity of the said mortgage as to the remaining property herein described.

In testimony whereof witness the signature of the said B. P. Means and of the said C. F. Blanks this the 12th day of September, 1914.

W. J. Dansby, of Butler, and Tilley & Elmore, of Montgomery, for appellant. Court erred in giving the affirmative charge in this case for the defendant. 194 Ala. 332, 70 South. 90; 194 Ala. 343, 70 South. 7; 151 Ala. 313, 44 South. 47; 194 Ala. 175, 69 South. 601; 134 Ala. 238, 32 South. 684. Appellant was entitled to recover in this case. 23 Ala. 684; 152 Ala. 640, 44 South. 859; 186 Ala. 368, 64 South. 621; 181 Ala. 535, 61 South. 299; 190 Ala. 135, 67 South. 288.

A. A. Evans, of Montgomery, and Neville & Stone, of Meridian, Miss., for appellee. Counsel discuss the assignments of error, and criticize the authorities cited by appellant, and insist that they are without application, and the cause should be affirmed.

McCLELLAN, J. Means, the appellant, instituted this action against Blanks, the appellee. Judgment for defendant following general affirmative instruction for defendant.

The plaintiff's case was stated in five counts, the complaint being amended so as to exclude from the pleading all reference to timber on lands lying in section 21, and confining the complaint to timber on land in section 28. Counts 2 and 5 declare for trespass through the cutting of plaintiff's timber; count 4 for a conversion of plaintiff's timber; count 1 for damages for the breach by defendant of a contract of sale of timber; and count 3 for willfully and knowingly cutting and carrying away of plaintiff's timber.

[1-3] Neither of the papers set out in the bill of exceptions transmitted the title to standing timber on the land in question from Means, the owner in August and September, 1914, to Blanks. Both of these papers manifest an unmistakable purpose, common to these parties, only to consummate the transaction for the sale and purchase of the timber by the execution by Blanks of a mortgage to Means, the latter engaging to release the timber on certain 40's of the land upon the contingency of payment by Blanks, at $2.50 per thousand feet, of 40 quantities as estimated in the paper dated September 12, 1914. Blanks executed a note to Means for $1,200, for the purchase of the timber, upon which he paid about $1,017. Blanks never executed the mortgage, as was distinctly contemplated. It is indicated by the evidence that soon after the parties had signed the paper dated August 12, 1914, Means permitted Blanks to move his mill on the land and enter upon the cutting of the timber thereon. The payments made by Blanks on the purchase money and the putting of Blanks in possession by Means met the exaction of the statute of frauds. Code, § 4289, subd. 5. The papers in this record being themselves inconclusive in the premises, what, in fact, were the terms of the contract between the parties, was a question upon which all pertinent evidence, written as well as parol, was admissible to contribute to the correct solution of the inquiry. Evidence of the negotiations, acts, statements, and conduct of both the parties in and about the transaction was properly admitted.

[4] The plaintiff contended, and so testified, that Blanks' right to cut timber on the land was limited, under their contract, to two years from August, 1914. If the plaintiff's contention in this respect was true, the defendant was a wrongdoer when, after notice not to do so, he returned with his theretofore removed mill to the land in the fall of 1917, entered it and cut and removed timber therefrom; and the plaintiff was entitled to recover such damages as that entry and cutting and removal of the timber entailed, provided the plaintiff did not—as phases of the evidence went to show plaintiff did do—consent or acquiesce in the defendant's re-entry in 1917 and his resumption of the theretofore pursued process of cutting the timber in question. The general affirmative charge, given at defendant's instance, took this feature· of the issue from the jury. It was error.

The judgment is reversed and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.